Citation Nr: 1104832 
Decision Date: 02/07/11 Archive Date: 02/14/11

DOCKET NO. 08-37 983 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in Detroit, 
Michigan

THE ISSUE

Entitlement to service connection for a psychiatric disorder.

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

R. Kessel, Counsel

REMAND

The Veteran had active military service from February 20, 1976 to 
June 29, 1976. He also had service from March 23, 1977 to April 
5, 1977; however, he was discharged for fraudulent enlistment and 
he did not accrue any additional days of active service.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal from a December 2007 rating decision of the Department 
of Veterans Affairs (VA) Regional Office (RO) in Togus, Maine.

In a January 2011 brief, the Veteran's representative indicated 
that the Veteran was also claiming entitlement to a non-service-
connected pension. As this issue has not been developed for 
appellate review, it is referred to the agency of original 
jurisdiction (AOJ) for appropriate action. The Board notes that 
a previous claim for pension benefits was denied by letter dated 
in June 2006.

This appeal has been advanced on the Board's docket pursuant to 
38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 
2002).

Service connection may be established for disability resulting 
from disease or injury incurred in or aggravated by active 
military service. 38 U.S.C.A. § 1131 (West 2002); 38 C.F.R. 
§§ 3.303, 3.304 (2010). In addition, certain chronic diseases, 
such as psychoses, may be presumed to have been incurred during 
service if the disease becomes manifest to a compensable degree 
within one year of separation from qualifying military service. 
38 U.S.C.A. §§ 1101, 1112, 1113 (West 2002 & Supp. 2010); 
38 C.F.R. §§ 3.307, 3.309 (2010).

The Veteran asserts that he has a psychiatric disorder, possibly 
schizophrenia, as a result of his active military service. He 
believes that a psychiatric disorder first manifested during 
basic training in Fort Knox, Kentucky. The Veteran recalls that 
he developed pneumonia and that he was told to sit in an ice 
bath. He subsequently began to hear voices. The Veteran states 
that he has heard similar voices ever since his military service. 
He acknowledges that he developed a substance abuse disorder, 
including heroin use, after his period of active service. 
Nevertheless, the Veteran maintains any drug use was self 
medication to treat the underlying psychiatric disorder that was 
the result of service. Thus, he contends that service connection 
is warranted for a psychiatric disorder.

The Veteran's representative notes that the Veteran's personnel 
records are not associated with the claims file. A review of the 
claims file reveals that only service treatment records have been 
obtained other than DD-214s. The Board finds that it is 
necessary to remand the claim in order to attempt to request the 
Veteran's personnel records from the National Personnel Records 
Center (NPRC) or other agency. The records may be relevant to 
the claim as his DD-214 covering his separation from his period 
of active service documents that the Veteran was discharged under 
the Trainee Discharge Program (Separation Program Designator 
"JNF"). He had been assigned to a STC (Special Training 
Company) Unit and received a "RE-3" reenlistment code that 
prevented him from reenlisting in the military absent a waiver. 
Notably, a second DD-214 indicates that the Veteran was 
discharged on April 5, 1977 for fraudulent enlistment (Separation 
Program Designator "YKG") after he attempted to reenlist in the 
military. The Veteran's representative argues that these 
circumstances of service may be an underlying indicator of a 
psychiatric disorder.

The service treatment records that have been associated with the 
claims file do not reference a diagnosed psychiatric disorder or 
any non-physical complaint. There is one entry, dated March 4, 
1976, indicating that the Veteran was seen in the emergency room 
at Ireland Army Hospital in Fort Knox for a sore throat, 
headache, cough, and temperature of over 102 degrees. It appears 
that the Veteran was admitted for "ARD," possibly acute 
respiratory distress. This incident may represent the Veteran's 
recollection of being treated for "pneumonia."

Although the service treatment records do not contain any mental 
health treatment records, the Veteran has implied that he did 
report hearing voices to a physician during service and received 
treatment. Thus, on remand, a record request should be made to 
Ireland Army Hospital in an attempt to secure any additional 
clinical records that have not already been obtained, including 
those related to mental health treatment.

Post-service treatment records from the VA Medical Center (VAMC) 
in Detroit, Michigan, have been obtained covering the period June 
2005 to May 2007. It appears that the Veteran receives regular 
treatment from that facility. Thus, updated treatment records 
should be obtained on remand. Additionally, the Veteran 
indicated that he initially received treatment at the Detroit 
VAMC in January 2001. The earlier records should also be 
obtained.

The record reflects that the Veteran receives benefits from the 
Social Security Administration (SSA). The RO requested records 
from SSA in March 2008. Later that month, SSA responded that it 
was unable to locate any medical records. In light of this 
response, it is not necessary to make additional record requests 
to SSA. See 38 C.F.R. § 3.159(c)(2) (2010).

The Veteran submitted two letters from his uncle K.S. who recalls 
that the Veteran was hearing voices when he returned from the 
military. The Veteran lived with K.S. prior to and shortly after 
service according to both of them. Notably, K.S. states that the 
Veteran wrote him letters during military service wherein the 
Veteran indicated that he was hearing voices. On remand, the 
Veteran should be asked to submit the letters should K.S. still 
have them in his possession.

The Veteran should also be scheduled for another VA psychiatric 
examination in order to have an examiner address the matter after 
the additional development has been accomplished. In addition to 
identifying any current psychiatric disorder, the designated 
examiner should provide an opinion as to whether the Veteran has 
a psychiatric disorder that had its onset during, or is otherwise 
attributable to, active military service, as well as whether a 
psychosis manifested within one year of his separation from 
active service. (The Board notes that a VA psychiatric 
examination was conducted in September 2007 whereby a VA examiner 
indicated that the Veteran did not fully meet the criteria for a 
diagnosis of schizophrenia, that the Veteran appeared to have 
psychotic symptoms as a result of polysubstance abuse, and that 
the Veteran appeared to be fabricating information regarding his 
medical history.)

Accordingly, this case is REMANDED for the following actions:

1. Send a letter to the Veteran asking him 
to submit to VA any letters that he wrote 
to his uncle K.S. during military service.

2. Contact the NPRC, or other appropriate 
government agency, and request the 
Veteran's service personnel records.

3. Contact the appropriate custodian and 
request the Veteran's clinical and 
hospitalization records, including any 
mental health records, from Ireland Army 
Hospital in Fort Knox (or any other Fort 
Knox medical facility) for the date range 
from February to June 1976.

4. Obtain the Veteran's more recent 
treatment records (since May 2007) from the 
Detroit VAMC and associate the records with 
the claims folder. Also, obtain his VA 
treatment records dated prior to June 2005.

5. After the above development is 
completed, schedule the Veteran for 
psychological testing and a VA psychiatric 
examination. (Advise the Veteran that 
failure to appear for an examination as 
requested, and without good cause, could 
adversely affect his appeal. See 38 C.F.R. 
§ 3.655 (2010).) The entire claims file, 
to include a complete copy of this remand, 
should be made available to, and reviewed 
by, the designated examiner. Psychological 
testing should be conducted with a view 
toward determining whether the Veteran in 
fact meets the criteria for a diagnosis of 
schizophrenia or other acquired psychiatric 
disorder. The examiner should list all of 
the Veteran's psychiatric disorders in 
accordance with DSM-IV. The examiner 
should review the historical records for 
evidence (including any statements and 
letters from K.S.) that might reflect that 
the claimed experience of hearing voices 
actually occurred during military service. 
The examiner should review the 
psychological test results, examine the 
Veteran, and provide an opinion as to the 
medical probabilities that the Veteran has 
any current psychiatric disorder that had 
its onset during, or is otherwise 
attributable to, his active military 
service (or that a psychosis manifested 
within one year of the Veteran's separation 
from active service). Consideration of 
post-service onset and any relationship to 
polysubstance abuse should also be 
addressed. An opinion should be provided 
for each identified psychiatric disorder. 
All examination results, along with the 
complete rationale for the opinions 
provided, to include citation to pertinent 
evidence of record and/or medical 
authority, as appropriate, should be set 
forth.

6. After the requested examination has 
been completed, the report should be 
reviewed to ensure that it is in complete 
compliance with the directives of this 
remand. If the report is deficient in any 
manner, it should be returned to the 
examiner.

7. After undertaking any other development 
deemed appropriate, re-adjudicate the issue 
on appeal. If the benefit sought is not 
granted, furnish the Veteran and his 
representative with a supplemental 
statement of the case and afford them an 
opportunity to respond before the record is 
returned to the Board for further review.

By this remand, the Board intimates no opinion as to any final 
outcome warranted. No action is required of the Veteran until he 
is notified by VA. The Veteran has the right to submit 
additional evidence and argument on the matter the Board has 
remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This case must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board or by the 
United States Court of Appeals for Veterans Claims for additional 
development or other appropriate action must be handled in an 
expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 
2010).

________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the 
Board is appealable to the United States Court of Appeals for 
Veterans Claims. This remand is in the nature of a preliminary 
order and does not constitute a decision of the Board on the 
merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).